In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00009-CR
______________________________


KENDELL GLEN NICHOLS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 19,045


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION
Â Â Â Â Â Â Â Â Â Â Â Â Responding to a curious report that a driver had fallen asleep behind the wheel while in a
local fast-food restaurant's drive-through, Commerce, Texas, police officers arrived on the scene to
see Kendell Glen Nichols "slumped down" in the driver's seat with his chin on his chest. From
outside the vehicle, they saw a beer can on the vehicle's floor. Officer Allen Hammond testified that,
from outside the vehicle, he then saw, in plain view in an open console
what looked to be a glass vial or tube that had black markings or burn marks on them,
which, through my experience, it looked like that which is used to smoke
amphetamines or other narcotics. I also saw a [sic] off-white or yellowish hard-like
substance. It was about maybe about as big as my knuckle, at first was all I could
see, and there was numerous plastic baggies also inside a little black pouch.
In this appeal, we are called on to determine whether there was sufficient evidence that the officers
saw, in plain view, drug paraphernalia or suspected controlled substances. There was sufficient
evidence. Therefore, we affirm.
Â Â Â Â Â Â Â Â Â Â Â Â On March 18, 1998, Nichols pled guilty in Hunt County cause number 19,045 to possessing,
with intent to deliver, an amount of amphetamine that weighed more than four grams but less than
400 grams, including adulterants and dilutants. The charged offense is a first-degree felony. Tex.
Health & Safety Code Ann. Â§ 481.103(a)(3) (Vernon 2003) (amphetamine penalty group 2 drug);
Tex. Health & Safety Code Ann. Â§ 481.113(d) (Vernon 2003) (possession with intent to deliver 
drug in penalty group 2 in amount between 4 and 400 grams is second-degree felony). There was
no plea agreement. The trial court considered the evidence and sentenced Nichols to ten years'
imprisonment. Nichols subsequently filed a timely


 notice of appeal.
Â Â Â Â Â Â Â Â Â Â Â Â On July 2, 2003, Nichols' appellate counsel filed an Anders


 brief in which he professionally
discussed the record, described the issues reviewed, and concluded there were no arguable grounds
for appeal, and, as required by Anders, also filed a motion to withdraw. Counsel also sent Nichols
a copy of the appellate brief and informed Nichols of his rights to file a pro se response and to review
the record. 
Â Â Â Â Â Â Â Â Â Â Â Â This Court informed Nichols at that time that his response, if any, was due by August 1,
2003. As of this date, Nichols has not filed a pro se response. We have independently reviewed the
record and the brief filed by counsel in this appeal, and we agree there are no arguable issues that
would support an appeal in this case.
Â Â Â Â Â Â Â Â Â Â Â Â We first note Nichols filed a pretrial motion to suppress. When reviewing a trial court's
ruling on a motion to suppress, we will not disturb the ruling absent a showing the trial court abused
its discretion. Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985). In a suppression
hearing, the trial court is the sole judge of witness credibility and the weight to be given to witness
testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court is free
to believe or disbelieve all or part of a witness' testimony. Meek v. State, 790 S.W.2d 618, 620 (Tex.
Crim. App. 1990). We must also view the evidence in the light most favorable to the trial court's
ruling, considering whether the trial court improperly applied the law to the facts. Romero, 800
S.W.3d at 543.
Â Â Â Â Â Â Â Â Â Â Â Â At the hearing on Nichols' motion to suppress, the State conceded its police officers made
a warrantless search of Nichols' vehicle. Accordingly, the burden shifted to the State to show the 
search of Nichols' car fell within one of the exceptions to the requirement that police not search a
person's property without securing a warrant. See McGee v. State, 105 S.W.3d 609, 615 (Tex. Crim.
App. 2003). One such exception is the "plain view" doctrine. See Ramirez v. State, 105 S.W.3d 730,
745 (Tex. App.âAustin 2003, no pet. h.) (plain view exception requires officer see item in plain view
at vantage point where officer has right to be and that officer immediately recognize that seized item
constitutes evidence).
Â Â Â Â Â Â Â Â Â Â Â Â Viewing the evidence in the light most favorable to the trial court's ruling, we find that
evidence exists to support the trial court's ruling that the drugs were seized pursuant to the plain view
exception to the warrant requirement. Hammond testified he was standing outside the car in the
parking lot of a public restaurant when he saw the items inside Nichols' vehicle which Hammond,
based on his experience, knew immediately to be drug paraphernalia and suspected illegal narcotics. 
Therefore, the trial court did not abuse its discretion by denying Nichols' motion to suppress. 
Â Â Â Â Â Â Â Â Â Â Â Â The record also supports the trial court's stated finding that Nichols' guilty plea, made
following the denial of his motion to suppress, was made willingly, knowingly, and voluntarily, and
was not the product of any plea agreement. Before accepting Nichols' plea, the trial court inquired
whether Nichols understood that, by waiving his right to a jury trial, pleading guilty, and submitting
the case to the trial court for punishment, the full range of punishment would be available to the trial
court. Nichols affirmatively stated, on the record and in writing, he understood the ramifications of
his jury waiver and his guilty plea. 
Â Â Â Â Â Â Â Â Â Â Â Â At the sentencing hearing, Nichols presented the testimony of several witnesses. Nichols
himself testified he believed no sentence of imprisonment would help him with his past drug
problems. He discussed the important roles he played in his family, including acting as a surrogate
big brother to his nephews and assisting his parents with the upkeep of their home. Nichols then
asked the trial court to sentence him to community supervision with a condition that he receive strict
out-patient drug treatment. 
Â Â Â Â Â Â Â Â Â Â Â Â Through its cross-examination of Nichols and other witnesses, the State showed that Nichols
was already on community supervision for a state jail felony drug conviction in Dallas at the time
he was arrested on the charges in this case and that he also had drug charges pending in Rockwall
at the time of the sentencing hearing. Nichols also admitted that, when he was arrested in this case,
he had in his possession sixty-seven tablets of Diezapan (Valium), over half a pound of marihuana,
electronic scales, a soldering torch (used to cook methamphetamine), and a pistol. 
Â Â Â Â Â Â Â Â Â Â Â Â In this case, the punishment assessed by the trial court was ten years' imprisonment. This is
at the low end of the range permitted under Texas law. See Tex. Pen. Code Ann. Â§Â 12.32(a)
(Vernon 2003). There is no evidence in the record before us of any plea agreement or of a promise
of community supervision from either the State or the trial court. To the contrary, Nichols' own
testimony on direct examination affirmatively refutes the existence of any such promise of leniency. 
Accordingly, we affirm the trial court's judgment.


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â October 1, 2003
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â October 17, 2003

Do Not Publish



4 4 2 4;
 mso-font-charset:0;
 mso-generic-font-family:swiss;
 mso-font-format:other;
 mso-font-pitch:variable;
 mso-font-signature:3 0 0 0 1 0;}
 /* Style Definitions */
 p.MsoNormal, li.MsoNormal, div.MsoNormal
 {mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpFirst, li.MsoFootnoteTextCxSpFirst, div.MsoFootnoteTextCxSpFirst
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpMiddle, li.MsoFootnoteTextCxSpMiddle, div.MsoFootnoteTextCxSpMiddle
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoFootnoteTextCxSpLast, li.MsoFootnoteTextCxSpLast, div.MsoFootnoteTextCxSpLast
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-11-061-CV%20Williams%20v.%20Williams%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-11-00061-CV

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  EDWIN ROSCOE WILLIAMS, JR.,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  JAMES N. E. WILLIAMS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the County
Court at Law No. 2

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Gregg County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 94-000316-P

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Prior to his
death in 1987, Edwin Roscoe Williams left his will Âto an attorney in Houston
to be probated.ÂÂ  In 1994, EdwinÂs
brother James N. E. Williams discovered that the attorney had not initiated
probate proceedings.Â  James filed the
will, and it was probated as a muniment of title.Â  The will named James as administrator of the
estate, bequeathed assets remaining after payment of debt to children Audwin
Glenn Williams and Jacqueline Kay Williams McClendon, and specified that no
provision was made to Âany other child or children.ÂÂ  In addition, no assets were left to EdwinÂs
wife.Â  

Â Â Â Â Â Â Â Â Â Â Â  In
2010, EdwinÂs son from a previous marriage, Edwin Roscoe[1]
Williams, Jr., filed a Âwill contest and motion to set aside order admitting
will for probate as a muniment of title.ÂÂ Â Â 
RoscoeÂs contest alleged that the trial court lacked jurisdiction to
admit the will to probate more than four years after EdwinÂs death.Â  James asserted in a motion for summary
judgment that RoscoeÂs collateral attack on the order admitting the will to
probate, filed more than sixteen years after the order, was barred by the
statute of limitations.Â  In response,
Roscoe argued that the discovery rule applied because James had fraudulently
informed the court that Edwin had never been divorced in the Âproof of death
and other facts.ÂÂ  Roscoe also alleged
that the transfer of assets was fraudulent because he had never received notice
of the proceedings and because Âthe Will was not self-proving on its face and
[was] admitted based upon deliberate false information.ÂÂ  Roscoe appeals the trial courtÂs order
granting JamesÂ summary judgment and ordering that Roscoe take nothing by way
of his claims.Â  

I. Â Â Â Â Â Â Â  Standard of Review

Â 

Â Â Â Â Â Â Â Â Â Â Â  We review de
novo the grant of a traditional motion for summary judgment. Â Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). Â To prevail on a motion for summary judgment,
the movant must conclusively establish the absence of any genuine question of
material fact and that judgment is available as a matter of law. Â Tex. R.
Civ. P. 166a(c); Browning v.
Prostok, 165 S.W.3d 336, 344 (Tex. 2005). Â A defendant moving for summary judgment must
conclusively negate at least one element of the plaintiffÂs theory of recovery
or plead and conclusively establish each element of an affirmative defense. Â Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995). Â If the defendant establishes his or her right
to summary judgment, the burden shifts to the plaintiff to raise a genuine
issue of material fact. Â Id.Â 


Â Â Â Â Â Â Â Â Â Â Â  The question
on appeal here is not whether the summary judgment proof raises a fact issue
with reference to the essential elements of RoscoeÂs cause of action, but
whether the summary judgment proof establishes that James is entitled to
judgment as a matter of law. Â French v. Gill, 252 S.W.3d 748, 751
(Tex. App.ÂTexarkana 2008, pet. denied) (citing Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 736 (Tex. 1990)).
Â In reviewing a summary judgment, we take
as true all evidence favorable to the nonmovant, indulge every reasonable inference
in favor of the nonmovant, and resolve any doubts in the nonmovantÂs favor. Â Sudan v.
Sudan, 199 S.W.3d 291, 292 (Tex. 2006).Â 
If the nonmovant asserts that the statute of limitations has been
tolled, it becomes the movantÂs burden to Âconclusively negate the tolling
provisionÂs applicationÂ before summary judgment may be awarded. Â French,
252 S.W.3d at 751 (quoting Allen v.
Intercapital Lodge Ltd. PÂship, 66 S.W.3d 351, 353 (Tex. App.ÂHouston [14th
Dist.] 2001, pet. denied)).

II. Â Â Â Â Â  Application 

Â 

Â Â Â Â Â Â Â Â Â Â Â  ÂNo will
shall be admitted to probate after the lapse of four years from the death of
the testator unless it be shown by proof that the party applying for such
probate was not in default in failing to present the same for probate within
the four years aforesaid.Â Â Tex. Prob. Code Ann. Â§Â 73 (West
2003).Â  Roscoe argued that the trial
court erred in admitting the will for probate in 1994 without Âproof that
Defendant was not in defaultÂ and that, therefore, the court was without
jurisdiction to admit the will for probate.Â 
However, James averred in the Âproof of death and other factsÂ that
EdwinÂs will Âwas turned over to an attorney in Houston to be probated.Â  Applicant only recently discovered that no
action had been taken by said attorney.ÂÂ 
At the time the court admitted the will for probate, it found JamesÂ
statement true and recited Âthat all the necessary proof required for probate
of the willÂ was made.Â  JamesÂ contention
sought to demonstrate that he was not in default in failing to present the will
for probate within four years of EdwinÂs death because he believed the will
would be probated by the attorney.Â  The
contention was not contested prior to the order admitting the will for probate
as a muniment of title.Â  

Â Â Â Â Â Â Â Â Â Â Â  The argument was
not raised until 2010 in the form of a will contest.[2]Â  Section 93 of the Texas Probate Code
provides:

After
a will has been admitted to probate, any interested person may institute suit
in the proper court to contest the validity thereof, within two years after
such will shall have been admitted to probate, and not afterward, except that
any interested person may institute suit in the proper court to cancel a will
for forgery or other fraud within two years after the discovery of such forgery
or fraud, and not afterward. Provided, however, that incapacitated persons
shall have two years after the removal of their disabilities within which to
institute such contest.

Â 

Tex. Prob. Code Ann.
Â§ 93 (West 2003).Â  The Âwill contest and
motion to set aside order admitting will for probateÂ was filed outside the
permissible statute of limitations.Â  

Â Â Â Â Â Â Â Â Â Â Â  Roscoe
alleged that the Section 93 limitations period was tolled by fraudulent
statements made by James in the proof of death and other facts.Â  The discovery rule applies in cases of fraud,
fraudulent concealment, and in other cases where the nature of the injury is
inherently undiscoverable.Â  Murphy v. Campbell, 964 S.W.2d 265, 270
(Tex. 1997).Â  However, Roscoe testified
under oath that he discovered the existence of the will Âbetween 1990 and 2000.ÂÂ  He further admitted that he had Âspoke[n] to
an attorney that said [Edwin] turned [the will] over to him.ÂÂ  An action to set aside a final probate of a
will as a muniment of title cannot be maintained when the action is not filed
until sixteen years after probate of the will and approximately ten years after
the plaintiff discovered that the will had been probated.Â  Fortinberry
v. Fortinberry, 326 S.W.2d 717, 720 (Tex. Civ. App.ÂWaco 1959, writ refÂd
n.r.e.). 

Â Â Â Â Â Â Â Â Â Â Â  We find that
James established his entitlement to summary judgment as a matter of law.Â  

III. Â Â Â Â  Conclusion 

Â 

Â Â Â Â Â Â Â Â Â Â Â  We
affirm the trial courtÂs judgment. 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  November
21, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  December
14, 2011

Â 

Â 

Â 

Â 

Â 

Â 











[1]We
refer to Edwin Roscoe Williams, Jr., as ÂRoscoeÂ to avoid confusion with the
name of the decedent. 





[2]RoscoeÂs
Âwill contest and motion to set aside order admitting will for probate,Â which
was filed under the same cause number as the probate proceeding, was not a
collateral attack upon the order.Â  A. & M. College of Tex. v. Guinn,
280 S.W.2d 373, 377 (Tex. Civ. App.ÂAustin 1955, writ refÂd n.r.e.).Â  Therefore, this is a direct, not a
collateral, proceeding.Â  Id.